UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL INGRAM,<br>    Defendant. | CRIMINAL NO. 5:15-78-KKC<br><br><br>**OPINION AND ORDER** |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendant Michael Ingram's second motion for compassionate release. (DE 167.) On July 7, 2017, Defendant pleaded guilty to conspiracy to distribute oxycodone and money laundering. (DE 136.) This Court sentenced Ingram to 96 months of imprisonment on October 27, 2017. (DE 146; DE 149 at 2.) His projected release date is April 26, 2023. Ingram is currently incarcerated at FCI Cumberland.

Ingram now moves the Court to modify his sentence under 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release." To support his motion, Ingram argues that he suffers from chronic health conditions, including obesity and heart disease, which make him more susceptible to an increased risk of severe illness or death from COVID-19. (DE 167 at 7.) Ingram points out that FCI Cumberland currently has active COVID-19 cases. (*See id.* at 7-9.) Ingram further maintains that "detention conditions create a heightened risk of danger to detainees." (*Id.* at 14.) For the following reasons, Ingram's motion is denied.

I.

Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the Court could not grant a motion for compassionate release unless the director of the Bureau of Prisons

1

("BOP") filed the motion. *See* 18 U.S.C. § 3582(c)(1)(A) (2002). The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the defendant himself "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . " 18 U.S.C. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018). The Sixth Circuit has determined that the occurrence of one of the two events mentioned in the statute is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 (citation and quotation marks omitted). Here, the government does not dispute that Ingram has met the exhaustion requirement. (*See* 171 at 9.) Therefore, the Court has authority to consider Ingram's request for compassionate release.

## II.

The compassionate release statute permits this Court to "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). Under the applicable provision of Section 3582(c)(1)(A), however, the Court may grant this relief only if it finds that "extraordinary and compelling reasons warrant such a reduction," and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The statute does not define what it means to be "extraordinary and compelling." The commentary to the policy statement by the Sentencing Commission applicable to Section 3582(c)(1)(A) provides some guidance; however, the Sixth Circuit has recently determined that the policy statement applies only to motions filed by the BOP and does not apply when

2

a defendant moves for compassionate release on the defendant's own behalf. *United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020). In such cases, district courts are no longer constrained by the reasons enumerated in § 1B1.13's application note. *See id.*; *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *see also United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Thus, courts need not rely on the application note as binding in its analysis; instead, a court may exercise its "full discretion" to determine whether the defendant has demonstrated extraordinary and compelling reasons for compassionate release, *Jones*, 980 F.3d at 1111, and, if so, whether the Section 3553(a) factors weigh in favor of release.

For purposes of this motion, the Court will assume that Ingram's purported health conditions amidst the COVID-19 pandemic in a prison setting present extraordinary and compelling circumstances that would warrant a sentence reduction. Even assuming, however, that extraordinary and compelling circumstances do exist that warrant a sentence reduction, the Court must still consider whether "the factors set forth in Section 3553(a) to the extent that they are applicable" support the requested sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *Jones*, 980 F.3d at 1107-1108. These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]

(3) the kinds of sentences available;

18 U.S.C. § 3553(a)(1)-(3).

The Section 3553(a) factors also include the "kinds of sentence and the sentencing range" established in the guidelines; "any pertinent policy statement" issued by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." § 3553(a)(4)-(7).

The Court previously considered these factors in sentencing Ingram and has reconsidered these factors for the purposes of this motion. (*See* Sentencing Tr.) The nature and circumstances of Ingram's crimes are serious. Ingram used his position as a pharmacist to conspire with others to dispense over 40,000 oxycodone tablets. (PSR ¶¶ 16-19.) Ingram then conducted multiple financial transactions with the proceeds from this unlawful distribution of oxycodone, including purchasing land. (*Id.* ¶ 21.) While Ingram's criminal history is not extensive, Ingram entered into a diversion agreement with the Commonwealth's Attorney of Pendleton County in 2012 after he fled from a deputy who was attempting to pull him over for speeding and subsequently struck the deputy's vehicle. (*Id.* ¶ 38.) The Court also previously found that Ingram violated the conditions of his pretrial release on bond for the instant offenses. (DE 78.) Contrary to Ingram's statement otherwise (DE 167 at 22), Ingram has committed a disciplinary infraction during his incarceration, as he was found in possession of unauthorized items in July 2020 (DE 171-2 at 22). Ingram's drug trafficking offense alone suggests that he poses a continued danger to the safety of the community. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."). Based upon the record before it, the Court cannot find that Ingram would not pose a danger to the community if he were to be released.

The guideline range for Ingram, as established under the sentencing guidelines, was 97 months to 121 months, but Ingram was sentenced to 96 months. (PSR ¶ 76; Sentencing

Tr. at 3:9-12, 8:23-25; DE 149 at 2; DE 171 at 19.) Therefore, Ingram was sentenced slightly below the sentencing guideline range. To date, Ingram has only served approximately 45% of his term. (*See* 171-1 at 3.) In related cases in the Southern District of Ohio, Ingram's co-conspirators, Dannette M. Hawthorne and Charlene Breedlove-Jones, were sentenced to 120 months of imprisonment and 91 months of imprisonment, respectively. (PSR at 2.) Thus, Ingram's sentence is comparable to that of his co-conspirators. The Court commends Ingram for participating in the Residential Drug Abuse Program ("RDAP"), and for completing and teaching adult continuing education courses. (DE 167 at 22.) However, considering the need for Ingram's prison term to deter future criminal conduct, promote respect for the law, and provide just punishment, release is simply not appropriate.

To the extent that Ingram asserts that FCI Cumberland is not adequately protecting prisoners from COVID-19 infections (*see* DE 167 at 14-18), this may be viewed as a request for release based upon the Eighth Amendment's prohibition against cruel and unusual punishment. Such a claim is not proper on a motion for compassionate release. Instead, a request for release on constitutional grounds is properly brought as a claim for habeas relief under 28 U.S.C. § 2241 because such claim "challenge[s] the fact or extent of [the defendant's] confinement by seeking release from custody." *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020).

Further, this Court has no authority to grant Ingram's request to serve the remainder of his sentence on home confinement. (DE 167 at 23-24.) The BOP is the entity that has the authority to designate the place of a prisoner's imprisonment, not the Court. 18 U.S.C. § 3621(b); *United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015).

## III.

Accordingly, in consideration of the Section 3553(a) factors and for the reasons stated in this opinion, it is not appropriate to order Ingram's release at this time. The Court hereby

ORDERS that Defendant Michael Ingram's second motion for compassionate release (DE 167) is DENIED.

Dated April 08, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY